[No. 23330. Department One. December 2, 1931.]

A. J. VOJTA *et al., Respondents,* v. WILLIAM BUHRE, *Appellant,* W. WYMORE *et al., Defendants.*[1]

*Revelle, Revelle & Kells,* for appellant.

*A. B. Cunningham,* for respondents.

TOLMAN, C. J.—This case was tried below upon an agreed statement of facts, from which it appears that, on November 8, 1924, appellant, Buhre, recovered a judgment in the superior court for Pierce county against the respondents, Vojta and wife, in the sum of $2,500.

[1]Reported in 5 P. (2d) 500.

At the time judgment was entered, respondents owned two separate tracts of land; the first consisting of four lots in a body, upon which they resided; and an additional lot in the same subdivision at some distance removed from the home site.

In January following entry of the judgment, the husband, A. J. Vojta, executed and filed a homestead declaration in the usual form, in which both tracts of land were described as though contiguous, and both were claimed as a homestead.

Immediately thereafter, respondents made a statutory assignment for the benefit of their creditors, in which they described these lands and claimed them as exempt under their homestead declaration. Notice to creditors was duly published under order of the court, requiring all creditors to present their claims within sixty days after the first publication, which was January 20, 1925. Proof was filed that written notice was mailed to all known creditors (appellant included) on January 22, 1925. Prior, however, to the publication and mailing of notice to creditors, and on January 16, 1925, on motion of the assignee, an order was entered by the court having jurisdiction of the assignment proceedings, setting over to the assignors (the respondents) all of the real estate described in the declaration of homestead, as being exempt under the homestead law.

It does not appear that any notice of any kind was given to any creditor of the application to set aside property as exempt, either before or after the order was made. Appellant did not in any manner appear or file any claim in the assignment proceedings.

Later, another homestead declaration was filed, describing the same property, apparently for the purpose

of supplying an estimate of the value of the property claimed.

In June, 1929, respondents traded the main tract of land, on which they actually resided, for other real property, to which they then removed, and upon which they have since resided; but they retained title to the isolated lot described in the homestead declaration.

In August, 1929, appellant caused to be issued a general execution on his judgment; and under his direction, the sheriff levied upon and proceeded to sell all of the real estate to which we have referred; being (1) the four lots upon which respondents resided when the homestead declaration was made; (2) the isolated lot described in the homestead declaration; and (3) the tract of land for which the four lots were traded, and which was taken in exchange for the original home tract.

Appellant became the purchaser of all of these tracts at the sheriff's sale; and, after the sheriff's certificate of sale issued to him, but before the time for redemption expired, respondents brought this action to remove the cloud cast by the sheriff's sale from the title of such of the land as they still claim to own. Additional defendants were brought in, and they were permitted to litigate as to the original home site, title to which had passed to them.

The decree entered by the trial court, so far as here questioned, quieted title in respondents to the property which they acquired in exchange for the original home tract; and also quieted title in them to the isolated tract, called tract No. 35.

Appellant now makes no claim to the tract upon which respondents originally resided, but, appealing from the judgment of the trial court, by his assignments of error he challenges the disposition made of the property constituting the new home taken in ex-

change for the old, and of the isolated tract No. 35.

■ Chapter 193, p. 265, Laws of 1927, repealing and amending certain provisions of the homestead law theretofore existing, provides, in § 2, as follows:

"The homestead is exempt from execution or forced sale, except as in this act provided; and the proceeds of the voluntary sale of the homestead in good faith for the purpose of acquiring a new homestead, shall likewise be exempt for one year, and also such new homestead acquired with such proceeds; and no judgment, or other claim against the owner of a homestead, except by mortgage, shall be a lien against such homestead in the hands of a *bona fide* purchaser for a valuable consideration." Rem. 1927 Sup., § 532.

So far as the present issues go, the legislative intent is here made very plain. The proceeds of a voluntary sale of a homestead may be cash in hand or may be other property taken in exchange therefor, and either comes within the language of the statute and is properly described and covered by the term "proceeds."

Such "proceeds" being exempt for the period of one year, and the levy and sale here involved having been made within one year from the time the original homestead was disposed of and the proceeds therefrom were received, such proceeds were exempt by the plain language of the statute, and the sale thereof on execution was properly set aside by the trial court.

We need not now inquire what the legislature intended by the words, "also such new homestead acquired with such proceeds." That question is therefore left to be decided when it shall be properly presented.

■ As to the isolated lot, the question is more involved. Respondents claim that the assignment proceedings, in which this lot was set over to them as exempt, stand as an adjudication of their right. Perhaps, if appellant had been brought into the assign-

ment proceedings before or at the time the property was set aside, this contention might be sound; but the record shows that the appellant never there appeared in any manner; that the order setting aside the property was made before any notice was given to creditors, either by mail or by publication. And even if general notice to creditors would be sufficient (which we doubt), there is no ground for invoking that rule here. We fail to see any ground upon which appellant can be held to be bound by the order exempting property made in the assignment proceedings.

The next and final question to be decided is whether tract No. 35, unimproved and separated by an eighth of a mile from the four lots which constituted respondents' home when the homestead declaration was filed, can be held to have been properly acquired or selected as a part of the homestead by that declaration. Section 1 of the act of 1927, to which we have heretofore referred, is an amendment of Rem. Comp. Stat., § 528; but so far as the present question is concerned, the change in the law made in 1927 is immaterial. Section 528, which was in effect when the declaration here involved was filed, reads:

"The homestead consists of the dwelling-house, in which the claimant resides, and the land on which the same is situated, selected as in this chapter provided."

The facts disclosed by the record, as they relate to tract No. 35, are very meager. In the agreed statement is the following:

"Tract 35 is not contiguous to the balance of the lands described in said exhibits, but is separated by a distance of approximately one-eighth mile, and is not improved, but is covered with small trees. That the plaintiff has continuously, from the time he acquired the title to said tract No. 35, used the same for the purpose of obtaining his supply of fuel for the use of his family."

The language of the statute itself seems to be controlling; and while homestead laws are to be liberally construed, we can see no way in which to construe either the law or the facts in this case so as to situate the dwelling house in which the claimant resided on the isolated tract.

The statutory language is clear and unambiguous. The words, "and the land on which the same is situated," admit of no construction which will permit the inclusion of a wholly isolated tract, no matter how much of the family livelihood is garnered from such tract.

It is true that, in *Morse v. Morris,* 57 Wash. 43, 106 Pac. 468, 135 Am. St. 968, we held that an intervening alley would not be sufficient to divide and segregate a tract which but for the alley strictly complied with the statute. This is far from holding that intervening private ownership for an eighth of a mile does not segregate.

*In re Murphy's Estate,* 46 Wash. 574, 90 Pac. 916, holds that the court will not divide a single tract into two, simply because there are two houses on the single tract. These decisions go as far as we think the statute will justify, and we are not now inclined to extend the rule.

Our statute is so plain and simple in its language that we find no help in cases from other jurisdictions based upon other statutes; but see *Commercial National Bank v. Carnahan,* 128 Kan. 87, 276 Pac. 57, 73 A. L. R. 110; *Oregon Mortgage Co. v. Dunbar,* 87 Mont. 603, 289 Pac. 559, 73 A. L. R. 113, and the note following, which seems to indicate that the majority rule is as respondents contend.

Even though that may be the majority rule, we feel obliged to reject it under the facts of this case. Had the legislature intended that separate tracts aggregat-

ing the value fixed might be selected, it would have been simple and easy to have said so; and for us to say so in the face of the statute would be judicial legislation pure and simple, and would open wide the gates so that any number of isolated tracts, so long as the value did not exceed the statutory amount, might be claimed and held. We can not see our way clear to thus set aside the statute and open the door.

The title to the isolated tract No. 35 should not have been quieted in respondents, but their rights therein should have been limited to the statutory right of redemption.

The judgment appealed from is reversed, with directions to enter judgment as herein indicated.

PARKER and BEELER, JJ., concur.

MITCHELL, J. (concurring)—I concur in the result of the majority opinion relating to the new home taken in exchange for the original home tract, whether the new one thus acquired be considered as the proceeds of a voluntary sale of the original one or a new homestead acquired with such proceeds. The execution sale of it occurred within a year after it had been acquired by the judgment debtors in exchange for their old homestead, and it was at that time exempt from execution or forced sale at the instance of this judgment creditor, according to the terms of the statute, Laws of 1927, p. 265, § 2 (Rem. 1927 Sup., § 532).

I concur in the majority opinion with respect to the isolated tract No. 35.

HERMAN, J., concurs with MITCHELL, J.